# EXHIBIT A

etronically FILED by Superior Court of California, County of Los Angeles on 12/17/2019 08:04:29 AM Sherri R. Carter, Executive Officer/Clerk of Court, by V. Delgadillo,Deputy Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

FIASCO ENTERPRISES, INC. DBA ENERGY TRANSPORT
LOGISTICS, a Foreign Corporation, SHELLY NEGRETE, an Individual,
WILLIAM MANDERVILLE, an Individual, WILLIAM SHERIDAN, an
Individual, and DOES 1-25 Defendants.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ALEXIS MITCHELL Plaintiff,
ALEXIS MITCHELL Plaintiff,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*
19STCV45126

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
T. Khan, Foglight Law, 800 Wilshire Blvd. Suite 200, Los Angeles, CA 90017, 626-869-8785

Sherri R. Carter Executive Officer / Clerk of Court

DATE: December 17, 2019
*(Fecha)* 12/17/2019
Clerk, by Veronica Delgadillo , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**NOTICE TO THE PERSON SERVED:** You are served
1. [✔] as an individual defendant.
2. [✔] as the person sued under the fictitious name of *(specify):*
   Fiasco Enterprises DBA Energy Transport Logistics, Inc.
3. [ ] on behalf of *(specify):*
   under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* | **FOR COURT USE ONLY** |

Electronically FILED by Superior Court of California, County of Los Angeles on 12/12/2019 03:34 PM Sherri R. Carter, Executive Officer/Clerk of Court, by W Miro, Deputy Clerk

T. Khan 295911
800 Wilshire Blvd. #200
Los Angeles, CA 90017

TELEPHONE NO.: 626.869.8785    FAX NO.: 626.708.0368
ATTORNEY FOR *(Name)*: Alexis Mitchell

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Mitchel v. Energy Transport Logistics, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited    ☐ Limited | ☐ Counter    ☐ Joinder | 19STCV45126 |
| (Amount demanded exceeds $25,000)   (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☑ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 11, 2019

T. Khan
(TYPE OR PRINT NAME)

DocuSigned by:
8EB70F7DCB6949B...
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

DocuSign Envelope ID: BCA5D499-49E4-4821-B90E-B45C2D4875BBA

| SHORT TITLE: Mitchell v. Energy Transport Logistics, Inc. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | 18780 S. Central Ave. |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| Carson | CA | 90746 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _____Central_____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

DocuSigned by:

_____
8EB79F7DCB6949B...

Dated: December 11, 2019

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**CIVIL CASE COVER SHEET ADDENDUM**

| SHORT TITLE: Mitchell v. Energy Transport Logistics, Inc. | CASE NUMBER |
|---|---|

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons – See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☑ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☑ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☑ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☑ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation    Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032 Quiet Title | 2, 6 |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

DocuSign Envelope ID: DCXB6455-29E4-4824-B00E-0424D4875B20

| SHORT TITLE: Mitchell v. Energy Transport Logistics, Inc. | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br>18780 S. Central Ave. |
|---|---|
| CITY:<br>Carson | STATE:<br>CA | ZIP CODE:<br>90746 | |

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: ___December 11, 2019___

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

| Reserved for Clerk's File Stamp |
| --- |
| **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**12/17/2019**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ Rogelio Lomeli _____ Deputy |

PLAINTIFF:
Alexis Mitchell

DEFENDANT:
Shelly Negrete et al

| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>19STCV45126 |
| --- | --- |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 04/09/2020 | Time: 8:30 AM | Dept.: 38 |
| --- | --- | --- |

NOTICE TO DEFENDANT:    THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b) and California Rules of Court, rule 2.2 et seq.

Dated: 12/17/2019

Maureen Duffy-Lewis / Judge
Judicial Officer

---

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in **Los Angeles**, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

T Khan
800 Wilshire Blvd
LOS ANGELES, CA 90017

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 12/17/2019

By Rogelio Lomeli
Deputy Clerk

| LACIV 132 (Rev. 07/13)<br>LASC Approved 10-03<br>For Optional Use | **NOTICE OF**<br>**CASE MANAGEMENT CONFERENCE** | Cal. Rules of Court, rules 3.720-3.730<br>LASC Local Rules, Chapter Three |
| --- | --- | --- |

DocuSign Envelope ID: ...

Electronically FILED by Superior Court of California, County of Los Angeles ... Sherri R. Carter, Executive Officer/Clerk of Court, by A. Miro, Deputy Clerk

T. Khan SBN 295911
admin@foglightlaw.com
Nicole Boutros SBN 324739
nicole.boutros@foglightlaw.com
FOGLIGHT LAW
800 Wilshire Blvd. Suite 200
Los Angeles, CA 90017
Tel: 626-869-8785
Fax: 626-708-0368

Attorneys for Plaintiff Alexis Mitchell

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| **ALEXIS MITCHELL**<br>Plaintiff,<br><br>vs.<br><br>**FIASCO ENTERPRISES, INC. DBA ENERGY TRANSPORT LOGISTICS,** a Foreign Corporation, **SHELLY NEGRETE,** an Individual, **WILLIAM MANDERVILLE,** an Individual, **WILLIAM SHERIDAN,** an Individual, and **DOES 1-25**<br>Defendants. | **Case No.:** 19STCV45126<br><br>**COMPLAINT**<br>1. **FAILURE TO PAY WAGES UPON TERMINATION (LABOR CODE §201)**<br>2. **WAITING TIME PENALTIES (LABOR CODE §203, §218.6, §2699)**<br>3. **RETALIATION IN VIOLATION OF FEHA (GOVERNMENT CODE §12490(H))**<br>4. **DISCRIMINATING, RETALIATING, AND TAKING ADVERSE ACTION (LABOR CODE §98.6, §1102.5)**<br>5. **RETALIATING FOR ENGAGING IN PROTECTED ACTIVITIES IN VIOLATION OF 42 U.S. CODE §1983**<br>6. **BREACH OF EMPLOYMENT CONTRACT IN VIOLATION OF LABOR CODE §2922**<br>7. **RACIAL DISCRIMINATION (GOVERNMENT CODE §12940(A))**<br>8. **DISABILITY DISCRIMINATION (GOVERNMENT CODE §12940(A))**<br>9. **FAILURE TO ENGAGE INTERACTIVE PROCESS GOVERNMENT CODE §12490(N))** |

COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

10. **FAILURE TO PROVIDE REASONABLE ACCOMMODATION §12940(M)**
11. **UNRUH ACT (CIVIL CODE §51 AND §52)**
12. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**
13. **HARASSMENT IN VIOLATION OF FEHA (GOVERNMENT CODE §12490(J))**
14. **FAILURE TO PREVENT HARASSMENT IN VIOLATION OF FEHA (GOVERNMENT CODE §12490(K))**
15. **BANE ACT (CIVIL CODE §52.1)**
16. **NEGLIGENCE**
17. **NEGLIGENT HIRING**
18. **NEGLIGENT SUPERVISION**
19. **NEGLIGENT RETENTION**
20. **CIVIL EXTORTION**
21. **CO-CONSPIRACY TO COMMIT EXTORTION**
22. **CONCEALMENT(CIVIL CODE §1710(3))**
23. **INTENTIONAL MISREPRESENTATION (CIVIL CODE §710(1))**
24. **NEGLIGENT MISPREPRESENTATION (CIVIL CODE §710(2))**

17

18   COMES NOW, Plaintiff ALEXIS MITCHELL, (hereinafter "MITCHELL") an

19   individual, by and through her attorneys of record FOGLIGHT LAW, by T. Khan, ESQ., and

20   by Nicole Boutros ESQ., and alleges as follows:

21                    **I.      INTRODUCTION**

22        1.      Energy Transport Logistics (hereinafter "ETL") unlawfully terminated Ms. Alexis

23   Mitchell's (hereinafter "MITCHELL") employment after MITCHELL performed work for ETL

24   under an employment contract on her start date of April 1, 2019.

25        2.      MITCHELL was not terminated until, on or about, April 2, 2019 at, approximately

26   3:30 PM by way of a phone call from MITCHELL's supervisor, Ms. Shelly Negrete (hereinafter

27   "NEGRETE").

3.    This phone call followed MITCHELL's complaints on her start date of April 1, 2019, that a co-worker, Mr. William Manderville (hereinafter "MANDERVILLE), harassed her while at work. NEGRETE admitted to hearing MANDERVILLE while the harassment occurred and failed to address the situation.

4.    On that same day, after MITCHELL went home during the lunch hour due to embarrassment and trauma over the situation, NEGRETE called MITCHELL and MITCHELL agreed to return to work on April 3, 2019 under the conditions that she would be moved away from MANDERVILLE's work station and that MANDERVILLE's harassment would be addressed directly by management.

5.    Instead of allowing the agreement to occur, NEGRETE called MITCHELL on April 2, 2019, and notified MITCHELL that ETL would be terminating her employment, giving MITCHELL the sole reason that it would be best for ETL and MITCHELL. NEGRETE further told MITCHELL that if she did not agree to let "bygones be bygones," then she would code MITCHELL's employment as "job abandonment," which she explained to MITCHELL may interrupt her unemployment benefits. In fear, MITCHELL agreed to let "bygones be bygones."

6.    Since then, ETL has failed to acknowledge MITCHELL's employment with ETL and also has failed to pay MITCHELL wages that she worked for.

## II.    JURISDICTION AND VENUE

7.    This Superior Court of the State of California, in and for the County of Los Angeles, has jurisdiction over the parties, and venue is proper, pursuant to Code of Civil procedure Section 395, because at all relevant times, MITCHELL was an individual residing in Long Beach, California, and DEFENDANT ETL was a foreign corporation, licensed to do business in Los Angeles County, and doing business at 18780 S. Central Avenue, Carson, CA 90746.  The alleged facts giving rise to the causes of action asserted by MITCHELL all occurred in Los Angeles County, California. NEGRETE, works at ETL in Carson, California. Upon information and belief, NEGRETE is a resident of the County of Los Angeles. DEFENDANT MANDERVILLE, at all relevant times, worked at ETL in Carson, California.

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

Upon information and belief, MANDERVILLE is a resident of the County of Los Angeles.
DEFENDANT WILLIAM SHERIDAN (hereinafter: "SHERIDAN") is a resident of El Cajon
in California. SHERIDAN is filed with California's Secretary of State as the Chief Executive
Officer and agent for service of process for Fiasco Enterprises, Inc. at 1034 Garden Glen
Lane, El Cajon, California 92019.

### III.    PARTIES

8.    COMPLAINANT and PLAINTIFF ALEXIS MITCHELL, is and at all relevant
times, a resident of Los Angeles County and was an employee of ETL. At all relevant times,
MITCHELL was acting in the court and scope of her employment.

1.    ETL does business in the County of Los Angeles.

2.    NEGRETE  works at ETL in Carson, California. Upon information and belief,
NEGRETE is a resident of the County of Los Angeles.

3.    MANDERVILLE works at ETL in Carson, California.
Upon information and belief, MANDERVILLE is a resident of the County of Los Angeles.

4.    SHERIDAN is a resident of El Cajon in California. SHERIDAN is filed with
California's Secretary of State as the Chief Executive Officer and agent for service of process
for Fiasco Enterprises, Inc. at 1034 Garden Glen Lane, El Cajon, California 92019.

5.    The true names and capacities of DEFENDANTS sued herein as DOES 1
through 25, inclusive, are unknown to MITCHELL, who therefore sues such DEFENDANTS
by such fictitious names pursuant to Code.Civ.Proc. § 474. MITCHELL alleges that each
fictitiously named DEFENDANT acted or failed to act in such a manner that each has
contributed in proximately causing the damages to MITCHELL as herein alleged.
MITCHELL will seek leave of court to amend this COMPLAINT to set forth their true names
and capacities when ascertained.

6.    MITCHELL is informed and believes, and thereon alleges, that each of the
DEFENDANTS sued herein, including those named herein as DOES, are the agents, servants,
licensees, guarantees, invitees, or assignees of each other, and in doing the things herein

alleged acted within the course and scope of such agency, employment guaranty, assignment, license, invitation and/or relationship and with the full knowledge and consent of the remaining DEFENDANTS.

## IV.   GENERAL ALLEGATIONS

7.    At all times herein mentioned, MITCHELL was a resident of the County of Los Angeles, California.

8.    At all times herein mentioned, ETL was a resident of the County of Los Angeles, California.

9.    At all times herein mentioned, ETL was and is a foreign corporation doing business in the County of Los Angeles, California.

10.    The true names and capacities of DEFENDANTS sued herein as DOES 1 through 25, inclusive, are unknown to MITCHELL, who therefore sues such DEFENDANTS by such fictitious names pursuant to Code Civil Procedure Section 474. MITCHELL alleges that each fictitiously named DEFENDANT acted or failed to act in such a manner that each has contributed in proximately causing the damages to MITCHELL as herein alleged. MITCHELL will seek leave of Court to amend this COMPLAINT to set forth their true names and capacities when ascertained.

## V.   FACTS

11.    MITCHELL, a 20 year-old black female, applied to be a Safety Administrative Assistant and was hired by ETL on March 20, 2019, with a scheduled start date of April 1, 2019. An Offer Letter showed her scheduled working hours would be Monday through Friday from 7:00 AM to 4:00 PM with one hour for lunch. The letter further described the job as a "permanent position" (**EXHIBIT 1**);

12.    MITCHELL accepted the offer on March 20, 2019 (**EXHIBIT 2**);

13.    On her start day, MITCHELL arrived to work at 6:59 AM. Before MITCHELL clocked in, a coworker introduced MITCHELL to her direct supervisor NEGRETE (white female), and an unnamed co-worker, MANDERVILLE (white middle-aged male);

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

14.    At the moment of introduction, NEGRETE and MANDERVILLE were both assembling MITCHELL's desk. Both NEGRETE and MANDERVILLE stopped what they were doing when MITCHELL was introduced by the unnamed coworker. NEGRETE greeted MITCHELL. MANDERVILLE looked at MITCHELL in a confused manner, made no contact, and walked away;

15.    After MITCHELL clocked in, NEGRETE told MITCHELL that she would be working at a desk in between NEGRETE and MANDERVILLE;

16.    At approximately 8:35 AM, NEGRETE walked away and said, "I'll be right back." Seconds later, MANDERVILLE stood up and said with a smirk, "I'll be right **BLACK.**"

17.    Approximately ten (10) minutes later, NEGRETE told MANDERVILLE that MITCHELL needed a filing cabinet. MANDERVILLE, who not too long earlier had been assembling MITCHELL's desk prior to meeting her, now replied, "I'm not putting it together!" MANDERVILLE did not work on the desk after that;

18.    Because of MANDERVILLE's behavior, MITCHELL left for lunch at 11:38 AM angry, upset, hurt and in shock. As a result, MITCHELL found herself unable to return or answer phone-calls from NEGRETE. NEGRETE contacted LaToya Davis (herein: "Davis"), MITCHELL's emergency contact and mother, and asked about MITCHELL's whereabouts. Davis, acting as an intermediary, explained to NEGRETE that MITCHELL was not well enough to speak and that MANDERVILLE's behavior and remarks were not acceptable. NEGRETE assured Davis that MANDERVILLE's behavior was not appropriate, that MANDERVILLE had been spoken to, and that MITCHELL would be moved to another desk;

19.    After Davis informed MITCHELL that the company had accepted responsibility for MANDERVILLE's behavior and spoken to him about it, MITCHELL called NEGRETE and reiterated what Davis had shared with NEGRETE and that she too was traumatized by MANDERVILLE's actions. During the call, NEGRETE admitted to

MITCHELL that she heard the remark MANDERVILLE made and that made her cringe. NEGRETE promised to move MITCHELL's desk further away from MANDERVILLE and that the CEO of ETL, WILLIAM SHERIDAN, would speak to MANDERVILLE as long as MITCHELL returned back to work on April 3, 2019. MITCHELL agreed to this accommodation and start date;

20. The next day, on April 2, 2019, at approximately, 3:30 NEGRETE notified MITCHELL that the company was going to go ahead and terminate her employment, telling MITCHELL it was best for MITCHELL and the company. MITCHELL expressed concern that the termination would impact her future unemployment insurance disbursements. NEGRETE called MITCHELL approximately three minutes later and notified her that she would "code the discharge" as "Job Abandonment" if MITCHELL did not let "bygones be bygones" and warned that coding it as "Job Abandonment" would interfere with MITCHELL's benefits;

21. MITCHELL immediately interpreted NEGRETE's remarks as a threat. In fear, MITCHELL notified NEGRETE, in writing, that she was aware that this was all happening because of MANDERVILLE's racist behavior and remarks but that she would consider this a "bygone" (**EXHIBIT 3**).

22. Long before this incident occurred, MANDERVILLE re-posted a Facebook post on January 18, 2017, that read, in pertinent part, "I WILL NOT APOLOGIZE for being straight. I WILL NOT APOLOGIZE for being Christian. I Will NOT APOLOGIZE for being white. I WILL NOT APOLOGIZE for supporting gun rights…"

23. MITCHELL worked for a total of four (4) hours and thirty-nine (39) minutes at a rate of $18 per hour in unpaid wages.

24. As a result of the aforementioned, MITCHELL suffered and continues to suffer from anxiety, nausea, headaches, and post-traumatic stress which is progressively getting worse.

## FIRST CAUSE OF ACTION

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

### Failure to Pay Wages Upon Termination in Violation of Labor Code §201
### (AGAINST ETL)

25.     MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

26.     MITCHELL was hired to perform work as an Administrative Assistant on March 20, 2019 for ETL (**EXHIBIT 1**);

27.     MITCHELL performed work for ETL on her start date of April 1, 2019. MITCHELL was not terminated until, on or about, April 2, 2019 at, approximately 3:30 PM. At that time, ETL had a duty to make an immediate payment of all earned wages to MITCHELL, which it failed to do;

28.     Consequently, MITCHELL is entitled to unpaid wages, totaling $83.70 in wages based on working for four (4) hours and thirty-nine (39) minutes at an agreed upon rate of $18.

29.     As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

30.     DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

### SECOND CAUSE OF ACTION

**Waiting Time Penalties in Violation of Labor Code §203, §218.6, §2699**

**(AGAINST ETL)**

31.      MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

32.      MITCHELL worked four (4) hours and thirty-nine (39) minutes at a rate of $18 per hour in unpaid wages on April 1, 2019. MITCHELL clocked in at, approximately, 6:59 AM and clocked out at, approximately, 11:38 AM. MITCHELL was terminated from her employment with ETL on or about, April 2, 2019 at, approximately 3:30 PM. At that time, ETL had a duty to make a payment of all earned wages to MITCHELL. ETL willfully failed to pay the wages to MITCHELL when NEGRETE notified MITCHELL she would "code the discharge" as "Job Abandonment" if MITCHELL did not let "bygones be bygones." The intentional omission to pay MITCHELL wages is evident in NEGRETE's threat to MITCHELL that if she did not let "bygones be bygones" with ETL, then MITCHELL would consequently have her unemployment benefits taken away from her;

33.      By willfully failing to pay these wages, ETL violated Labor Code Sections 203, 218, and 2699. Consequently, MITCHELL is entitled to unpaid wages and a civil penalty based on the number of days ETL failed to pay MITCHELL when due, which includes $200 in civil penalties as well as, at least, $540 in waiting time penalties and $83.70 in wages;

34.      As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

35.      DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were

known, ratified and approved by the officers or managing agents of DEFENDANTS, and

each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against

the DEFENDANTS, in an amount to be determined at the time of trial.

### THIRD CAUSE OF ACTION

### Retaliation in Violation of FEHA (Govt. C. 12490(H))

### (AGAINST NEGRETE AND ETL)

36.    MITCHELL hereby incorporates by reference all prior allegations and

paragraphs set forth in this Complaint.

37.    MITCHELL engaged in a protected activity when she called NEGRETE to

complain about MANDERVILLE's racist comments to MITCHELL that occurred on her first

day at work. MITCHELL, being a 20 year old African American female, explained to

NEGRETE she felt embarrassed, shocked, and scared that MANDERVILLE singled her out

for being "black." MITCHELL and NEGRETE discussed moving MITCHELL's desk as long

as MITCHELL agreed to come back to work April 3, 2019. On April 2, 2019, without any

prior notice or warnings, NEGRETE notified MITCHELL that the company was going to go

ahead and terminate her employment;

38.    MITCHELL's complaints to NEGRETE about being singled out at work for

being black was the substantial motivating reason for her discharge. MITCHELL was hired

due to her experience, however, she did not have a chance to properly perform her required

duties. Hence, MITCHELL's work performance was not the cause of her termination and

there was no other motivating reason for the sudden termination of MITCHELL's

employment. Rather, MITCHELL's complaint of harassment at work to NEGRETE was one

of the underlying reason to terminate her employment.

39.    As a further direct and proximate result of DEFENDANTS' conduct,

MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear,

embarrassment, mental and emotional pain, distress and discomfort, severe emotional

distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

40.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

## FOURTH CAUSE OF ACTION

**Discriminating, Retaliating, & Taking Adverse Action in Violation of Labor Code §98.6, §1102.5**

**(AGAINST ALL DEFENDANTS)**

41.    MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

42.    MITCHELL, a 20 year-old black female, applied to be a Safety Administrative Assistant and was hired by ETL on March 20, 2019. On April 1, 2019, MITCHELL's scheduled start date, MITCHELL disclosed to her supervisor, NEGRETE of MANDERVILLE's racist behavior towards her while at work on that same day. MITCHELL had reasonable cause to believe that informing her supervisor of the harassing behavior of a coworker was in compliance with company standards and procedures under the circumstances. MITCHELL had a right to inform her supervisor that her co-worker had engaged in violation of laws protecting her against racism and that her co-worker's words and/or conduct had seriously impacted her;

43.    As a result of the disclosure of such information to NEGRETE on April 1, 2019, ETL terminated MITCHELL's employment on April 2, 2019;

- 11 -
COMPLAINT FOR DAMAGES

44.    Consequently, MITCHELL is entitled to civil penalties for being discharged based on her race. Having violated both Labor Code Sections 98.6 and 1102.5, ETL owes a combined amount of $20,000 in civil penalties, reasonable attorney's fees and costs.

45.    As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

46.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

### FIFTH CAUSE OF ACTION

**Retaliating for Engaging in Protected Activities in Violation of 42 U.S. Code §1983**

**(AGAINST NEGRETE, SHERIDAN, AND ETL)**

47.    MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

48.    On April 1, 2019, MANDERVILLE blatantly harassed and discriminated against MITCHELL right in front of NEGRETE when NEGRETE said "I'll be right back" and a few seconds later, MANDERVILLE said with a smirk on his face, "I'll be right **BLACK**."

49.    NEGRETE, MITCHELL's supervisor, exhibited callous disregard towards the

entire situation when she admitted to MITCHELL that she heard MANDERVILLE's racist comments and did nothing about them. NEGRETE waited until MITCHELL did not come back to work to address the situation;

50.    Later that day, when NEGRETE was on the phone with MITCHELL discussing why MITCHELL was too traumatized to return to work after MANDERVILLE's behavior, NEGRETE agreed to moving MITCHELL's desk and MITCHELL agreed to return to work on April 3, 2019;

51.    As a result of the complaints on the phone pertaining to MANDERVILLE's racism towards MITCHELL on MITCHELL's first day at work, NEGRETE informed MITCHELL that ETL was intentionally terminating MITCHELL's employment on April 2, 2019 without any other justification. The termination was a result of MITCHELL's whistleblowing about discrimination at work;

52.    MITCHELL was entitled to inform her supervisor, NEGRETE, about her anxiety and trauma concerning the racism she experienced. NEGRETE exhibited deliberate indifference towards the entire situation when she failed to comfort MITCHELL when she heard MANDERVILLE make the racist comment. Further, upon informing MITCHELL that ETL was terminating her employment, NEGRETE did not deny that ETL's decision was based on her whistleblowing on another co-worker and the anxiety she experienced thereafter. This showed an implied agreement with MITCHELL. Finally, as MITCHELL's supervisor, NEGRETE had a duty to explain to MITCHELL what her options were under company policies or that MITCHELL could contact the EEOC. NEGRETE did not inform MITCHELL of any option at all. NEGRETE showed perpetual and deliberate disregard when she failed to do act appropriately in any of the aforementioned;

53.    ETL's intentional termination of MITCHELL after learning about MITCHELL's experiences with MANDERVILLE and how she reacted thereafter was a substantial factor in causing MITCHELL's harm;

54.    Consequently, MITCHELL is entitled to civil penalties against ETL for

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

violating 42 U.S. Code Section 1983.

55.    As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

56.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

## SIXTH CAUSE OF ACTION

### Breach of Employment Contract in Violation of Labor Code §2922

### (AGAINST ETL)

57.    MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

58.    ETL promised, by words or conduct, to discharge MITCHELL only for good cause;

59.    MITCHELL substantially performed her employment duties on April 1, 2019, prior to her lunch break. MITCHELL's performance for the rest of the day was excused when MITCHELL was unable to return to work after lunch due to being harassed by MANDERVILLE on the basis of being black;

60.    At all times, DEFENDANTS NEGRETE, and SHERIDAN, and DOES 1-25

were employees of ETL. As the employer of DEFENDANTS NEGRETE, MANDERVILLE, SHERIDAN, and DOES 1-25, ETL are responsible for the acts of NEGRETE, MANDERVILLE, SHERIDAN, and DOES 1-25 while acting in the course and scope of their employment (Respondeat Superior);

61.     ETL's failure to abide by MITCHELL's employment contract and terminate MITCHELL's employment without any justification caused MITCHELL's harm;

62.     ETL did not have good cause to discharge MITCHELL for misconduct. ETL, NEGRETE, SHERIDAN and DOES 1-25 did not conduct, in good faith, an appropriate, thorough and unbiased investigation into the allegations made by MITCHELL against MANDERVILLE. There was no indication of any investigation made by ETL, NEGRETE, SHERIDAN, or DOES 1-25 to indicate MITCHELL engaged in any misconduct to show just cause for termination. Rather than conducting a thorough, complete, fair, and unbiased investigation, ETL, NEGRETE, SHERIDAN, and DOES 1-25 inappropriately concluded that MITCHELL would be a potential future liability to the company because she lawfully complained about discrimination from a coworker. Thereafter, ETL based MITCHELL's termination solely on that fact alone.

63.     As a further direct and proximate result of DEFENDANTS' breach of contract, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

## SEVENTH CAUSE OF ACTION

### Racial Discrimination (Govt. C. §12940(A))

### (AGAINST ALL DEFENDANTS)

64.     MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

65.    MITCHELL complained to NEGRETE on her first day of work, April 1, 2019, as a result of feeling shocked, embarrassed, and scared when her coworker, MANDERVILLE, made racist comments towards her when he stood up and said with a smirk, "I'll be right **BLACK**" to MITCHELL, an African American. When Davis and MITCHELL complained to NEGRETE that MITCHELL was too emotionally distressed to return to work, ETL was notified that MITCHELL was now suffering from severe anxiety for being singled out and humiliated for being black;

66.    MITCHELL was able and willing to perform her essential job duties This was confirmed in a phone call with NEGRETE on April 1, 2019 when NEGRETE, in response to MITCHELL's complaints, promised that the SHERIDAN, ETL's CEO, would speak with MANDERVILLE and that MITCHELL's desk would be moved away from MANDERVILLE's desk;

67.    ETL terminated MICHTELL's employment without notice or warning on April 2, 2019 as a result of her lawful complaints that MANDERVILLE humiliated her for being black;

68.    MITCHELL was terminated in retaliation for complaining about what she reasonably perceived to be unlawful racial discrimination and harassment on the basis of her anxiety. Further, her complaint to NEGRETE regarding discrimination based on being black from a co-worker was the *only* reason for Defendants' decision to terminate MITCHELL because ETL saw her emotional reaction as a potential liability and inconvenience that ETL didn't want to accommodate;

69.    ETL, NEGRETE, MANDERVILLE, SHERIDAN, and DOES 1-25 each failed to take any remedial action, refused to investigate MITCHELL's complaint, and failed to protect her from both discrimination and retaliation. Rather, ETL found that it would be more convenient for the company to disregard MITCHELL's legitimate concerns as to avoid any potential future inconveniences and dismiss MITCHELL by terminating her employment.

70.    As a further direct and proximate result of DEFENDANTS' conduct,

MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

71.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

<u>**EIGHTH CAUSE OF ACTION**</u>

**Disability Discrimination (Govt. C. §12940(A))**

**(AGAINST ALL DEFENDANTS)**

72.    MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

73.    MITCHELL communicated to NEGRETE on her first day of work, April 1, 2019, that she was suffering from anxiety, shock, embarrassment, and recent trauma when her coworker, MANDERVILLE, made racist comments towards her when he stood up and said with a smirk, "I'll be right **BLACK**" to MITCHELL, an African American. NEGRETE and MITCHELL agreed to move MITCHELL's desk away from MANDERVILLE's and agreed to have ETL's CEO, SHERIDAN, address the issue with MANDERVILLE directly. MITCHELL agreed to these accommodations and agreed to return back to work April 3, 2019;

74.    MITCHELL communicated that she was suffering from anxiety and recent

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

trauma to NEGRETE who communicated this fact to SHERIDAN and management. As a result of the disclosure of information regarding MANDERVILLE's harassment towards MITCHELL and her emotionally distressed response on April 1, 2019, ETL terminated MITCHELL's employment on April 2, 2019 without any other justification, warning, or notice;

75.    MITCHELL was terminated only when she complained that she was suffering from anxiety and recent emotional distress. Further, her complaint to NEGRETE regarding the anxiety that stemmed from the discrimination was the *only* reason for Defendants' decision to terminate MITCHELL. Accordingly, Defendants, and each of them, terminated MITCHELL's employment in retaliation for exercising her rights under FEHA;

76.    ETL, NEGRETE, MANDERVILLE, SHERIDAN, and DOES 1-25 each failed to take any remedial action, refused to investigate MITCHELL's complaint, and failed to provide her reasonable agreed-upon accommodations. Rather, ETL found that it would be more convenient for the company to not address the potential liability of the issue at all and dismiss MITCHELL by terminating her employment and further, threatening her to pretend that her employment with ETL never existed.

77.    As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

78.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and

each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

## NINTH CAUSE OF ACTION

### Failure to Engage in Interactive Process (Govt. C. §12940(N))

### (AGAINST ALL DEFENDANTS)

79.    MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

80.    MITCHELL communicated to NEGRETE on her first day of work, April 1, 2019, that she was suffering from anxiety, shock, embarrassment, and recent trauma after her co-worker, MANDERVILLE, made racist comments towards her. NEGRETE then communicated MITCHELL's conditions to management at ETL. Hence, NEGRETE, ETL, SHERIDAN, and DOES 1-25 were put on notice that MITCHELL suffered from anxiety and trauma;

81.    Prior to communicating MITCHELL's condition to management, NEGRETE spoke to MITCHELL to discuss MITCHELL's reaction to MANDERVILLE's comments. NEGRETE promised that she would move MITCHELL's desk away from MANDERVILLE's and promised that MANDERVILLE would be spoken to regarding his conduct. MITCHELL agreed to come back to work provided these reasonable accommodations would be provided to her;

82.    ETL, SHERIDAN, NEGRETE, and DOES 1-25 failed to participate in a timely good-faith interactive process with MITCHELL to determine whether she could continue working under the circumstances of the aforementioned reasonable accommodations NEGRETE promised MITCHELL.  ETL, SHERIDAN, NEGRETE, and DOES 1-25 did not even attempt to work with MITCHEL to determine effective accommodations. DEFENDANTS, and each of them, terminated MITCHELL's employment, before she even had a chance to return back to work, without any regard for engaging in an appropriate

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

1    interactive process nor any attempt to accommodate MITCHELL's conditions as NEGRETE

2    promised;

3        83.    ETL, SHERIDAN, NEGRETE, and DOES 1-25's failure to engage in a good-

4    faith interactive process, as well as their callous disregard towards MITCHELL's needs to

5    effectively work prior to terminating her employment, was the substantial factor in causing

6    MITCHELL's harm;

7        84.    As a further direct and proximate result of DEFENDANTS' conduct,

8    MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear,

9    embarrassment, mental and emotional pain, distress and discomfort, severe emotional

10   distress, peace of mind and future security, loss of financial stability, all to her detriment and

11   to her special and general damage in amounts not fully ascertained but within the jurisdiction

12   of this court and subject to proof at the time of trial;

13       85.    Management did not give MITCHELL an opportunity to apply the

14   accommodations or ask for other accommodations vis a vie an interactive process. Had they

15   provided MITCHELL this opportunity, instead of concluding that she was unfit to work at

16   ETL, MITCHELL would have been successful at her position at ETL.

17       86.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively,

18   and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were

19   obnoxious, despicable, and ought not to be suffered by any member of the community. All

20   actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were

21   known, ratified and approved by the officers or managing agents of DEFENDANTS, and

22   each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against

23   the DEFENDANTS, in an amount to be determined at the time of trial.

## TENTH CAUSE OF ACTION

### Failure to Provide Reasonable Accommodation (Govt. C. §12940(M))

### (AGAINST ALL DEFENDANTS)

27       87.    MITCHELL hereby incorporates by reference all prior allegations and

paragraphs set forth in this Complaint.

88.     MITCHELL communicated to NEGRETE on the phone after leaving her first day of work early on April 1, 2019, that she was suffering from anxiety, shock, embarrassment, and recent trauma after her co-worker, MANDERVILLE, made racist comments towards her. As a result of her conditions, MITCHELL told NEGRETE that she was unable to return to work, unless reasonable accommodations were made;

89.     During the same phone call, NEGRETE and MITCHELL agreed that MITCHELL would come to work under the conditions that NEGRETE would move MITCHELL's desk away from MANDERVILLE's and, further, that MANDERVILLE would be spoken to about his inappropriate behavior towards MITCHELL;

90.     MITCHELL indicated that she would be able to return to work and perform her job duties with these agreed-upon reasonable accommodations;

91.     ETL failed to provide these reasonable accommodations to MITCHELL when NEGRETE thereafter communicated MITCHELL's conditions to management at ETL. In response, ETL did not want to attempt to accommodate MITCHELL at all. Management, including SHERIDAN and DOES 1-25 merely terminated MITCHELL's employment in response to what they had learned about MITCHELL's conditions;

92.     ETL, SHERIDAN, NEGRETE, and DOES 1-25's failure to provide any reasonable accommodation to MITCHELL in order for MITCHELL to have a chance to effectively work prior to terminating her employment was the substantial factor in causing MITCHELL's harm.

93.     As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

94.     DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

**ELEVENTH CAUSE OF ACTION**

**UNRUH Act in Violation of Civil Code §51 and §52**

**(AGAINST ALL DEFENDANTS)**

95.     MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

96.     ETL discriminated against MITCHELL when it terminated her as a result of her response to a coworker's racist comments and discrimination towards her. Rather than accommodating MITCHELL by moving her desk and dealing with MANDERVILLE in the appropriate capacity to prevent further discrimination at the workplace, ETL denied the accommodation of moving her desk as well as denied MITCHELL the right to her employment when it terminated her employment as a result of her complaints regarding MANDERVILLE;

97.     MANDERVILLE discriminated against MITCHELL when MANDERVILLE specifically targeted MITCHELL's race and treated her differently because of it when he said, "I'll be right **BLACK**" and when he refused to finish setting up her desk only after knowing she was black;

98.   NEGRETE discriminated against MITCHELL when she saw and heard this discrimination and did nothing to stop or prevent it. NEGRETE further discriminated against MITCHELL by co-conspiring with management to terminate MITCHELL's

– 22 –

COMPLAINT FOR DAMAGES

1  employment on the basis of a disability when MITCHELL communicated to her that she
2  suffered from anxiety and trauma due to MANDERVILLE's actions against her;

3    99. SHERIDAN discriminated against MITCHELL's race when he heard of
4  the discrimination that took place and failed to investigate or take appropriate measures to
5  handle the discrimination that took place. In addition to discriminating against MITHCHELL
6  for her race, SHERIDAN continued to discriminate against MITCHELL on the basis of a
7  disability when SHERIDAN agreed to terminate MITCHELL for her anxiety and trauma
8  from MANDERVILLE's behavior against her;

9    100.   The motivating reason for MITCHELL's discharge was her complaints
10 regarding MANDERVILLE's racism towards her based on her being African American.  The
11 termination was a result of MITCHELL's complaints about discrimination at work because
12 there was no other explanation for the sudden termination of MITCHELL's employment.

13   101.   As a further direct and proximate result of DEFENDANTS' conduct,
14 MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear,
15 embarrassment, mental and emotional pain, distress and discomfort, severe emotional
16 distress, peace of mind and future security, loss of financial stability, all to her detriment and
17 to her special and general damage in amounts not fully ascertained but within the jurisdiction
18 of this court and subject to proof at the time of trial.

19   102.   DEFENDANTS did the things hereinabove alleged, intentionally,
20 oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL.
21 These acts were obnoxious, despicable, and ought not to be suffered by any member of the
22 community. All actions of DEFENDANTS' employees and agents, and each of them as
23 herein alleged, were known, ratified and approved by the officers or managing agents of
24 DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or
25 exemplary damages against the DEFENDANTS, in an amount to be determined at the time of
26 trial.

27

## TWELFTH CAUSE OF ACTION

## Intentional Interference with Prospective Business Relations

### (AGAINST NEGRETE AND MANDERVILLE)

103.    MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

104.    NEGRETE and MANDERVILLE both know of MITCHELL's employment with ETL because a coworker introduced MITCHELL to NEGRETE and MANDERVILLE before MITCHELL clocked in on her first day. Further, NEGRETE was introduced as MITCHELL's supervisor;

105.    MANDERVILLE engaged in discriminatory conduct towards MITCHELL when at approximately 8:35 AM, NEGRETE walked away and said, "I'll be right back" and seconds later, MANDERVILLE stood up and said with a smirk, "I'll be right **BLACK**."

106.    Approximately ten (10) minutes later, NEGRETE told MANDERVILLE that MITCHELL needed a filing cabinet. MANDERVILLE, who not too long earlier had been assembling MITCHELL's desk prior to meeting her, now replied, "I'm not putting it together!"

107.    This harassment disrupted MITCHELL's employment relationship on her first day with ETL because she was so upset and shocked that she was unable to return to work after lunch;

108.    On April 1, 2019, MITCHELL complained of MANDERVILLE's harassment to NEGRETE. NEGRETE promised MITCHELL that she would move her desk and have MANDERVILLE dealt with appropriately to avoid similar encounters in the future if MITCHELL promised to return to work on April 3, 2019;

109.    The harassment further disrupted MITCHELL's employment relationship with ETL because NEGRETE contacted MITCHELL on April 2, 2019, to inform her that ETL would be terminating her employment as a result of the discrimination that occurred towards MITCHELL;

110.    MANDERVILLE disrupted MITCHELL's employment relationship with ETL

Because his bullying and racism was intended to pressure MITCHELL to leave ETL on her own;

111.   NEGRETE disrupted MITCHELL's employment relationship with ETL by advising management and/or conspiring with management to act unlawfully towards MITCHELL and threaten to disrupt her employment if MITCHELL persisted on asking for her paycheck.

112.   As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

113.   DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

## THIRTEENTH CAUSE OF ACTION

### Harassment in Violation of FEHA (Govt. C. 12490(J))

### (AGAINST ALL DEFENDANTS)

114.   MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

115.   MITCHELL was subjected to unwanted harassment because she was African

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

American when MANDERVILLE said among other things, he would "be right **BLACK**"

with a smirk on his face. Further, MANDERVILLE was putting together MITCHELL's desk

and refused to finish only after meeting her for the first time;

116.    MANDERVILLE's conduct at work was severe and pervasive.

MANDERVILLE knew that this was MITCHELL's first day on the job and a reasonable

person on their first day at a new workplace is particularly self-conscious. Further, a

reasonable African American in her circumstances would have been felt this environment was

hostile and abusive because of MANDERVILLE's direct attack on MITCHELL's race;

117.    MITCHELL considered the work environment, as a result of

MANDERVILLE's behavior, to be hostile and abusive because MITCHELL left for lunch

angry, upset, hurt, and in shock. Further, MITCHELL found herself unable to return or

answer phone-calls from NEGRETE, her supervisor;

118.    NEGRETE admitted to MITCHELL later that day that she heard

MANDERVILLE's comments to MITCHELL and that she too was traumatized by

MANDERVILLE's behavior. NEGRETE promised to move MITCHELL's desk further away

from MANDERVILLE and that the CEO WILLIAM SHERIDAN would speak to

MANDERVILLE on the condition that MITCHELL return back to work on April 3, 2019.

Rather than these appropriate corrective measures occurring, NEGRETE contacted

MITCHELL the following day and informed her that ETL changed its mind and would be

terminating MITCHELL's employment contract;

119.    MITCHELL was terminated due to her complaints about discrimination

at work.

120.    As a further direct and proximate result of DEFENDANTS' conduct,

MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear,

embarrassment, mental and emotional pain, distress and discomfort, severe emotional

distress, peace of mind and future security, loss of financial stability, all to her detriment and

to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

121. DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

**FOURTEENTH CAUSE OF ACTION**

**Failure to Prevent Harassment in Violation of FEHA (Govt. C. 12490(K))**

**(AGAINST ETL)**

122. MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

123. MITCHELL was subjected to harassment as a result of her being African American when MANDERVILLE said, he would "be right **BLACK**" with a smirk on his face. Further, MANDERVILLE was putting together MITCHELL's desk and refused to finish only after meeting her for the first time;

124. As MITCHELL's supervisor, NEGRETE, and ETL failed to take all reasonable steps to prevent the discrimination and harassment because NEGRETE admitted to MITCHELL later that day that she heard MANDERVILLE's comments to MITCHELL and that she too was traumatized by MANDERVILLE's behavior. However, NEGRETE did not take any steps to stop MANDERVILLE from saying these things while they occurred or after. While NEGRETE promised to move MITCHELL's desk further away from MANDERVILLE and that the CEO WILLIAM SHERIDAN would speak to MANDERVILLE, NEGRETE contacted MITCHELL the following day and informed her

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

that ETL changed its mind and would be terminating MITCHELL's employment contract. Consequently, no remedial or preventative steps were taken;

125.    NEGRETE's and ETL's failure to take all reasonable steps to prevent harassment was a substantial factor in MITCHELL's termination because rather than handling the situation appropriately, ETL found it was more convenient and less burdensome to avoid the entire situation and terminate MITCHELL's contract after her first day.

126.    As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

127.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

### FIFTEENTH CAUSE OF ACTION

### Violation of the Bane Act, Civil Code §52.1

### (AGAINST ALL DEFENDANTS)

128.    MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

129.    MANDERFILLE acted violently against MITCHELL on her first day on the job when he made harassing comments directed at MITCHELL being African American, such as saying "I'll be right **BLACK**" with a smirk on his face. Further, he refused to

continue assembling MITCHELL's desk or construct any more furniture for MITCHELL only after meeting her;

130.    MITCHELL was harmed by this behavior when she suffered emotional distress and trauma as a result of the harassment. After sharing with her supervisor, NEGRETE consequently informed MITCHELL that ETL would be terminating her employment;

131.    MANDERVILLE'S conduct was a substantial factor in the termination because ETL and NEGRETE decided to terminate MITCHELL's employment due to her complaints about discrimination at work.

132.    As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

133.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

## SIXTEENTH CAUSE OF ACTION

### Negligence

### (AGAINST ALL DEFENDANTS)

134.    MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

135.    ETL owed MITCHELL a duty of care, breached such duty and in doing so

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

1    failed to exercise any lack of any care or engaged in conduct that was an extreme departure

2    from what a reasonably careful person would do in the same situation to prevent harm to

3    oneself or to others;

4        136.    At all times relevant, MITCHELL was an employee of ETL. As the employer

5    of DEFENDANT, ETL is responsible for the acts of NEGRETE and MANDERVILLE while

6    acting in the course and scope of their employment (Respondeat Superior);

7        137.    ETL and NEGRETE should have taken reasonable steps to handle the situation

8    and prevent MANDERVILLE from further harassment at work.  Rather, ETL avoided taking

9    reasonable steps by terminating MITCHELL's contract and threatening her when NEGRETE

10   informed MITCHELL that she would code the termination as "Job Abandonment" which

11   would prevent her from receiving her benefits if MITCHELL did not agree to let "bygones be

12   bygones."

13       138.    As a further direct and proximate result of DEFENDANTS' conduct,

14   MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear,

15   embarrassment, mental and emotional pain, distress and discomfort, severe emotional

16   distress, peace of mind and future security, loss of financial stability, all to her detriment and

17   to her special and general damage in amounts not fully ascertained but within the jurisdiction

18   of this court and subject to proof at the time of trial.

19       139.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively,

20   and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were

21   obnoxious, despicable, and ought not to be suffered by any member of the community. All

22   actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were

23   known, ratified and approved by the officers or managing agents of DEFENDANTS, and

24   each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against

25   the DEFENDANTS, in an amount to be determined at the time of trial.

26                          **SEVENTEETH CAUSE OF ACTION**

27                               **Negligent Hiring**

## (AGAINST ETL)

140.    MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

141.    At all times relevant, MANDERVILLE was an employee of ETL. As MANDERVILLE's employer, ETL is responsible for MANDERVILLE's acts while he was acting in the course and scope of their employment (Respondeat Superior);

142.    MANDERVILLE was unfit to perform the work for which he was hired because he was racist before he was hired and while he was working for ETL;

143.    ETL knew or should have known that MANDERVILLE may have been racist because on January 18, 2017, MANDERVILLE re-posted on Facebook a post that read, in pertinent part, "I WILL NOT APOLOGIZE for being straight. I WILL NOT APOLOGIZE for being Christian. I Will NOT APOLOGIZE for being white. I WILL NOT APOLOGIZE for supporting gun rights…" ETL had a duty to satisfy its due diligence in conducting basic background searches on its employees to ensure they are fit. ETL either failed to do this or knew about the possibility that MANDERVILLE would be racist while working and failed to acknowledge it during the hiring process;

144.    MANDERVILLE's racist beliefs made him unfit to work at ETL;

145.    Because ETL knew or should have known they were hiring a potentially racist employee and allowed potential  racism to occur within the workplace without taking precautionary or preventative measures, ETL was negligent when MANDERVILLE was racist towards MITCHELL.

146.    As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

147.   DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

## EIGHTEENTH CAUSE OF ACTION

### Negligent Supervision

### (AGAINST ETL, SHERIDAN, NEGRETE, AND DOES 1-25)

148.   MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

149.   At all times relevant, MANDERVILLE was an employee of ETL. As MANDERVILLE's employer, ETL is responsible for MANDERVILLE's acts while he was acting in the course and scope of their employment (Respondeat Superior);

150.   MANDERVILLE became unfit to perform the work for which he was hired when he discriminated against his co-worker, MITCHELL on the basis of her race when he said to her with a smirk, "I'll be right **"BLACK."**

151.   ETL, SHERIDAN, NEGRETE, and DOES 1-25 knew that MANDERVILLE was racist and would act on that racism at work when NEGRETE heard and admitted that she heard the racist comment made to MITCHELL. NEGRETE, MITCHELL's supervisor, failed to confront MANDERVILLE when the comment was made and did not confront him afterwards. NEGRETE was further put on notice that these comments traumatized MITCHELL when she was told by both Davis and MITCHELL herself the toll that MANDERVILLE's behavior had on her. Again, NEGRETE failed to take any appropriate remedial measures as MITCHELL's supervisor when she promised to move

MANDERVILLE's desk and have him spoken to, but did not see through with either promise;

152.   MANDERVILLE's racist behavior made him unfit to work at ETL;

153.   Because ETL, SHERIDAN, NEGRETE, and DOES 1-25 knew MANDERVILLE's racism at work created a particular risk to his co-workers, and did failed to act, ETL, SHERIDAN, NEGRETE, and DOES 1-25 were negligent when they allowed the racism to occur and did nothing about it.

154.   As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

155.   DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

## NINETEENTH CAUSE OF ACTION

### Negligent Retention of Employee

### (AGAINST ETL)

156.   MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

157.   At all times relevant, MANDERVILLE was an employee of ETL. As

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

MANDERVILLE's employer, ETL is responsible for MANDERVILLE's acts while he was acting in the course and scope of their employment (Respondeat Superior);

158.   MANDERVILLE became unfit to perform the work for which he was hired when he discriminated against his co-worker, MITCHELL on the basis of her race when he said to her with a smirk, "I'll be right **"BLACK."**

159.   ETL knew that MANDERVILLE was racist and that he would act on that racism at work when NEGRETE heard and admitted that she heard the racist comment made to MITCHELL. NEGRETE, MITCHELL's supervisor, failed to confront MANDERVILLE when the comment was made and did not confront him afterwards. ETL was further put on notice that these comments traumatized MITCHELL when NEGRETE was told by both Davis and MITCHELL herself the toll that MANDERVILLE's behavior had on MITCHELL. ETL failed to take any appropriate remedial measures when ETL knew that MANDERVILLE was racist, would act on those beliefs at work, and kept him as an employee anyway;

160.   MANDERVILLE's racist behavior made him unfit to work at ETL;

161.   Because ETL knew MANDERVILLE's racism created a particular risk to his co-workers, ETL was negligent when it failed to terminate MANDERVILLE's employment to protect its employees from further discrimination.

162.   As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

163.   DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were

1    known, ratified and approved by the officers or managing agents of DEFENDANTS, and

2    each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against

3    the DEFENDANTS, in an amount to be determined at the time of trial.

### TWENTIETH CAUSE OF ACTION

#### Civil Extortion

#### (AGAINST ETL, NEGRETE, AND SHERIDAN)

7    164.    MITCHELL hereby incorporates by reference all prior allegations and

8    paragraphs set forth in this Complaint.

9    165.    DEFENDANTS, particularly, DEFENDANT NEGRETE, threatened to expose

10   to the State of California, Employment Development Department, that MITCHELL was

11   employed with ETL or to, otherwise, connect MITCHELL with a disgrace, crime or

12   deformity;

13   166.    When NEGRETE threatened to expose to the State of California, Employment

14   Development Department, that MITCHELL was employed with ETL or to, otherwise,

15   connect MITCHELL with a disgrace, crime or deformity, DEFENDANTS intended to use

16   MITCHELL's fear to obtain her consent, willingness to leave to ETL without complaint and

17   surrender to the company all of the wages she had earned;

18   167.    As a result of NEGRETE's threat to expose to the State of California,

19   Employment Development Department, that MITCHELL was employed with ETL or to,

20   otherwise, connect MITCHELL with a disgrace, crime or deformity, MITCHELL went along

21   with NEGRETE's plan to not report her employment to EDD, leave without complaining to

22   ETL, and surrendered all the wages she had earned prior to her termination to ETL.

23   168.    As a further direct and proximate result of DEFENDANTS' conduct,

24   MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear,

25   embarrassment, mental and emotional pain, distress and discomfort, severe emotional

26   distress, peace of mind and future security, loss of financial stability, all to her detriment and

27

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

169.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

## TWENTY-FIRST CAUSE OF ACTION

### Co-Conspiracy to Commit Extortion

### (AGAINST ETL, NEGRETE, SHERIDAN, DOES 1-25)

170.    MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

171.    NEGRETE was aware that ETL's management, including SHERIDAN and DOES 1-25, planned to extort MITCHELL when NEGRETE communicated to management the circumstances surround MITCHELL's anxiety after her first day working for ETL; and in response,

172.    ETL's management, SHERIDAN, and NEGRETE agreed that NEGRETE would call MITCHELL and terminate her employment, and during the same conversation, threaten MITCHELL into walking away from ETL. Accordingly, NEGRETE told MITCHELL that she would code MITCHELL's employment as "job abandonment," unless MITCHELL agreed to let "bygones be bygones."

173.    DEFENDANTS were further aware that MITCHELL had worked for ETL and intended to retain the $83.70 in wages owed to MITCHELL.

174.    As a further direct and proximate result of DEFENDANTS' conduct,

MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

175.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

<u>**TWENTY-SECOND CAUSE OF ACTION**</u>

**Concealment in Violation of Civil Code §1710(3)**

**(AGAINST ETL, NEGRETE, SHERIDAN, DOES 1-25)**

176.    MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

177.    As MITCHELL's employer, ETL owed MITCHELL fiduciary duties;

178.    DEFENDANTS agreed that NEGRETE would intentionally mislead MITCHELL into believing that if she did not let "bygones be bygones" and abandon her job, MITCHELL would lose her unemployment benefits;

179.    MITCHELL did not know that her unemployment benefits were not controlled by ETL;

180.    On April 2, 2019, at approximately 3:30 PM, the day after NEGRETE promised MITCHELL to accommodate her, NEGRETE contacted MITCHELL and terminated her employment, stating that it was best for MITCHELL and the company. NEGRETE further explained that she would report MITCHELL's employment status as "job abandonment."

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

1    MITCHELL explained that she was on unemployment and that coding it under "job

2    abandonment" would interfere with her unemployment benefits. Approximately three minutes

3    later, NEGRETE called MITCHELL back and stated that MITCHELL could either let

4    "bygones be bygones," so that MITCHELL could stay on unemployment, or code

5    MITCHELL's employment as "job abandonment."

6        181.    ETL intended to deceive MITCHELL by concealing the fact that ETL did

7    not have the authority, under the circumstances, to put a stop to her unemployment benefits;

8        182.    Had MITCHELL known that ETL did not have the authority to stop her

9    unemployment benefits, she would have not agreed to allow "bygones be bygones."

10        183.    As a further direct and proximate result of DEFENDANTS' conduct,

11    MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear,

12    embarrassment, mental and emotional pain, distress and discomfort, severe emotional

13    distress, peace of mind and future security, loss of financial stability, all to her detriment and

14    to her special and general damage in amounts not fully ascertained but within the jurisdiction

15    of this court and subject to proof at the time of trial.

16        184.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively,

17    and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were

18    obnoxious, despicable, and ought not to be suffered by any member of the community. All

19    actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were

20    known, ratified and approved by the officers or managing agents of DEFENDANTS, and

21    each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against

22    the DEFENDANTS, in an amount to be determined at the time of trial.

23                        **TWENTY-THIRD CAUSE OF ACTION**

24            **Intentional Misrepresentation in Violation of Civil Code §1710(1)**

25                **(AGAINST ETL, NEGRETE, SHERIDAN, DOES 1-25)**

26        185.    MITCHELL hereby incorporates by reference all prior allegations and

27    paragraphs set forth in this Complaint.

186. NEGRETE told MITCHELL that she would code MITCHELL's employment status as "job abandonment" and report it to the EDD if MITCHELL did not agree to let "bygones be bygones," which would in effect prevent her from receiving future unemployment benefits;

187. NEGRETE's statement was false because employers do not have a duty to report an employee's employment status to the EDD. An employee has a duty to report their own employment themselves to the EDD on the DE4581 Form (**EXHIBIT 4**);

188. ETL and NEGRETE knew that what NEGRETE led MITCHELL to believe was false, because NEGRETE, being a trained supervisor, and, ETL, being a relatively large employer, wanted MITCHELL to rely on NEGRETE's false statements in order to get MITCHELL to agree to let "bygones be bygones."

189. MITCHELL reasonably relied on NEGRETE's statements when she agreed to let "bygones be bygones" or, otherwise, risk having her benefits revoked.

190. As a further direct and proximate result of DEFENDANTS' conduct, MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

191. DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

## TWENTY-FOURTH CAUSE OF ACTION

## Negligent Misrepresentation in Violation of Civil Code §1710(2)
### (AGAINST ETL, NEGRETE, SHERIDAN, DOES 1-25)

192.    MITCHELL hereby incorporates by reference all prior allegations and paragraphs set forth in this Complaint.

193.    NEGRETE told MITCHELL that she would code MITCHELL's employment status as "job abandonment" and report it to the EDD if MITCHELL did not agree to let "bygones be bygones," which would, in effect, prevent MITCHELL from receiving future unemployment benefits. However, NEGRETE's representations were false;

194.    Even if NEGRETE may have honestly believed that the representation was true, ETL and NEGRETE had no reasonable grounds for believing the representation was true because ETL's management had time and resources to come together to discuss appropriate employment termination legalities prior to NEGRETE's misrepresentation to MITCHELL. After MITCHELL communicated to NEGRETE that she was on unemployment, they hung up the phone and approximately three minutes later, NEGRETE called MITCHELL back to give her the option to either let "bygones be bygones," so that MITCHELL could stay on unemployment, or alternatively, code it under "job abandonment," which would effect MITCHELL's unemployment benefits. NEGRETE had time to discuss with management what the proper course of action would be, however, in between these calls, NEGRETE decided to provide MITCHELL with the ultimatum;

195.    ETL and NEGRETE knew that what NEGRETE led MITCHELL to believe was false, but wanted MITCHELL to rely on that false statement in order to get MITCHELL to agree to let "bygones be bygones."

196.    MITCHELL reasonably relied on NEGRETE's statements when she agreed to let "bygones be bygones" in fear that she would have her benefits revoked if she did not otherwise agree.

197.    As a further direct and proximate result of DEFENDANTS' conduct,

MITCHELL has suffered, and continues to suffer from anxiety, humiliation, worry, fear, embarrassment, mental and emotional pain, distress and discomfort, severe emotional distress, peace of mind and future security, loss of financial stability, all to her detriment and to her special and general damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

198.    DEFENDANTS did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure MITCHELL. These acts were obnoxious, despicable, and ought not to be suffered by any member of the community. All actions of DEFENDANTS' employees and agents, and each of them as herein alleged, were known, ratified and approved by the officers or managing agents of DEFENDANTS, and each of them. Therefore, MITCHELL is entitled to punitive or exemplary damages against the DEFENDANTS, in an amount to be determined at the time of trial.

### PRAYER FOR RELIEF

WHEREFORE, Complainant PRAYS AS FOLLOWS:

1.    For general and special damages in an amount to be proven at trial, but in no event less than the jurisdictional minimum of this Court;

2.    For costs of suit;

3.    Attorney's fees pursuant to all applicable code sections;

4.    Punitive damages pursuant to all applicable code sections;

5.    For such other and further relief as the court may deem proper.

### DEMAND FOR JURY TRIAL

MITCHELL hereby demands a trial by jury on all issues so triable.

Date: December 11, 2019

DocuSigned by:

8EB79F7DCB6649B...

T. Khan

Attorney for Complainant

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

1
2
3
4
5

# EXHIBIT 1

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

COMPLAINT FOR DAMAGES



03/20/2019

Alexis Mitchell
651 E 46th Street
Long Beach, CA 90807
AlexisMitchell2598@icloud.com

Dear Alexis Mitchell:

We are pleased to offer you a position with our company.  We are delighted to make you the following job offer.

The positional we are offering is the position of Safety Administrative Assistant.  The starting salary is $18.00 hourly with a review after 90 Days.  After the 90 days, the company will determine whether an increase to $19.00 is in order.  The company will provide an annual review thereafter.  The working hours as discussed are Monday – Friday from 7:00 AM to 4:00 PM with an hour for lunch.  This is a permanent position.

Benefits information after the 90 days has been complete

- Vacation -- As Per Employee Handbook
- 401K program
- Probation – 90 Days
- Health Insurance
- Dental Care

We would like you to start work on Monday, April 1, 2019 .  We would like you to come in to process all hiring documentation on Monday April 1, 2019.  Please report to Shelly Negrete to process documentation and complete orientation.

Please respond back to our email as confirmation.

We are confident that you will be able to make a significant contribution to the success of Energy Transport Logistics Safety Division and looking forward to working with you.

Sincerely,


*Rebeca Megallon*
*Energy Transport Logistics*

COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT 2

COMPLAINT FOR DAMAGES

**From:** Alexis Mitchell
<alexismitchell2598@icloud.com>
**Sent:** Wednesday, March 20, 2019 11:35 AM
**To:** Rebeca Megallon
<Rebeca@energytransportlogistics.com>
**Subject:** Re: offer letter.docx

Hi Rebecca,

Thank you so much. I would like accept the offer. I will
be in tomorrow afternoon to fill out the application
form.

Thanks again,
Alexis Mitchell

COMPLAINT FOR DAMAGES

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT 3

COMPLAINT FOR DAMAGES

On Apr 2, 2019, at 4:46 PM, Alexis Mitchell
<alexismitchell2598@icloud.com> wrote:

Hello Shelly,

Thank you for the opportunity to work for
Energy Logistics. I'm extremely saddened that
a racial comment toward me made by William
had the effect it did and the company found it
necessary terminate me. This is an unfortunate
situation and I wish you the best. I've decided
to let bygones be bygones.

Thank you,
Alexis Mitchell

COMPLAINT FOR DAMAGES

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

1
2
3
4

# EXHIBIT 4

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

COMPLAINT FOR DAMAGES

ALLOW 10 DAYS FOR DELIVERY OF CHECK.    DETACH THIS STUB FOR YOUR RECORD

## CONTINUED
## CLAIM

ANSWER ALL QUESTIONS.  SEE SECTION A. ON BACK FOR EXAMPLES
OF HOW TO COMPLETE YOUR ANSWERS.  Each question is explained
in your booklet, A Guide to Benefits and Employment Services.

COMPLETE AND MAIL THIS FORM ON

| | | IST WEEK | | 2ND WEEK | |
|---|---|---|---|---|---|
| | Begins Ends | | | Begins Ends | |
| | | YES | NO | YES | NO |
| 1. Were you too sick or injured to work? ............................ > | | ☐ | ☐ | ☐ | ☐ |
| If yes, enter the number of days (1 through 7) you were unable to work. ................... > | | ☐ (1 - 7) | | ☐ (1 - 7) | |
| 2. Was there any reason (other than sickness or injury) that you could not have accepted full-time work each workday? ............................ > | | ☐ | ☐ | ☐ | ☐ |
| 3. Did you look for work? .................................... > | | ☐ | ☐ | ☐ | ☐ |
| ☐ <---- IF MARKED 'X', YOU MUST COMPLETE SEC. B., WORK-SEARCH RECORD, ON REVERSE. | | | | | |
| 4. Did you refuse any work? ................................. > | | ☐ | ☐ | ☐ | ☐ |
| 5. Did you begin attending any kind of school or training? ......... > | | ☐ | ☐ | ☐ | ☐ |
| 6. Did you work or earn any money, WHETHER YOU WERE PAID OR NOT? ............ > | | ☐ | ☐ | ☐ | ☐ |
| (If yes, you MUST COMPLETE items a. and b. below.) | | | | | |
| a. Enter earnings before deductions here. .................... > | $ ☐☐☐☐☐ | | | $ ☐☐☐☐ | |
| b. Report employment or 'source' of earnings information below. | | | | | |

| | DATE LAST WORKED | TOTAL HOURS WORKED | EMPLOYER NAME AND MAILING ADDRESS - INCLUDE ZIP CODE | REASON NO LONGER WORKING (OR WRITE "STILL WORKING") |
|---|---|---|---|---|
| 1ST WEEK | | | | |
| 2ND WEEK | | | | |

7. If you want federal income tax withheld for the week(s) shown above,
mark this block. ...................................... > ☐
8. If you had a change of mailing address or phone number,
mark this block and complete Sec. D on reverse. ................ > ☐

I understand the questions on this form. I know the law provides penalties if I
make false statements or withhold facts to receive benefits; my answers are
true and correct. I declare under penalty of perjury that I am a U.S. citizen or
national; or an alien in satisfactory immigration status and permitted to work by
USCIS. I signed this form after the latest date for which I am claiming benefits.

X
(your signature is required)

DE 4581CTO Rev. 6  (5-04) (INTERNET)                Page 1 of 2                                    CU-PA866

## DETACH AND DISCARD

COMPLAINT FOR DAMAGES

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

**Section A / Sección A**  The following are examples of how to complete your answers to the questions on the front of this form.
*Los siguientes son ejemplos en como completar sus respuestas a las preguntas en el frente de este formulario.*

| MARK THE CORRECT ANSWER | *MARQUE LA RESPUESTA CORRECTA* |
|---|---|
| EXAMPLE: IF THE ANSWER IS "YES":    Yes ■    No ☐ | *EJEMPLO: SI LA RESPUESTA ES "SI":    Sí ■    No ☐* |
| IF THE ANSWER IS "NO":    Yes ☐    No ■ | *SI LA RESPUESTA ES "NO":    Sí ☐    No ■* |

Write numbers like this:
*Escriba números como estos:*    0  1  2  3  4  5  6  7  8  9          (b)  $ 3 4 2 . 5 8

**EXAMPLE:** Report earnings of:  (a) $76.10 (b) $342.58 (c) $1050.55, like this:
*EJEMPLO: Reporte ingresos de:  (a) $76.10 (b) $342.58 (c) $1050.55 así:*    (a)  $ 7 6 . 1 0   (c)  $ 9 9 9 . 9 9

**Section B / Sección B**    If the box under Question 3 on the reverse is marked "X", you must complete the table below to show your work search for the weeks being claimed. / *Si el cuadrado en la pregunta #3 en el reverso está marcado con una "X", usted debe de completar la tabla a continuación para indicar su búsqueda de traba jo durante la(s) semana(s) que solicita beneficios.*

**WORK-SEARCH RECORD / RECORD DE LOS LUGARES DONDE HA BUSCADO TRABAJO**

| Date Applied /Fecha en que Solicitó Empleo | Company Name / Nombre de la Compañía | Company Address / Dirección de la Compañía | Person Contacted / Persona con quien se Comunicó | Type of Work Applied For / Clase de Traba jo que Solicitó | Results: Please explain / Resultado: Por favor Explique |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Section C / Sección C**   Notice to Educational Institution  (FOR EMPLOYMENT DEVELOPMENT DEPARTMENT APPROVED TRAINING ONLY)
*Aviso para La Institución Educacional  (PARA CURSOS DE ENTRENAMIENTO APROBADO POR EL DEPARTAMENTO DEL DESARROLLO DEL EMPLEO {EDD})*

I certify that this individual was enrolled in and satisfactorily pursuing the retraining course of instruction approved by the Employment Development Department during the week(s) shown on the front of this form        Signature/Title_____Date_____

Name of Training Institution  ..............................................

If you are on a semester/holiday recess, enter the date you are scheduled to return to school. ..........................
*Si Ud. está en vacaciones/días feriados del semestre escolar, escriba la fecha en que regresará a la escuela:*

**Section D / Sección D**    New Mailing Address / *Nueva Dirección de Correo*

Complete below and mark Question 8 block on front / *Complete abajo y marque la pregunta 8 en el frente.*    | New phone - include area code / *Nuevo número de teléfono - incluyendo área telefónica* |
|---|
| ( ) |

Zip Code: / *Zona Postal:*

DE 4581CTO Rev. 4 (5-04) State of California / Employment Development Department (INTERNET)        Page 2 of 2        CU-PB318    MIC 52

- 50 -

COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT 5

COMPLAINT FOR DAMAGES

DocuSign Envelope ID: DCAB0495-29E4-4821-B00E-042FD4875B22

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

May 7, 2019

Alexis Mitchell
651 E. 46th Street Apt 4
Long Beach, California 90807

RE:  **Notice of Case Closure and Right to Sue**
     DFEH Matter Number: 201904-05958328
     Right to Sue: Mitchell / Energy Transport Logistics

Dear Alexis Mitchell,

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective May 7,
2019 because an immediate Right to Sue notice was requested. DFEH will take no
further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

COMPLAINT FOR DAMAGES